IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARUN KUMAR BHATTACHARYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-03361 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| STATE BANK OF INDIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arun Kumar Bhattacharya purchased certificates of deposit from Defendant State Bank of India ("SBI") and deposited them into an account he had opened there. Plaintiff brought the present action after SBI allegedly took actions that violated the terms of its certificates of deposit. Now, SBI argues that, as an agency or instrumentality of India, it is a foreign state immune from jurisdiction of courts in the United States under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and therefore seeks dismissal of the case for lack of subject-matter jurisdiction and lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). (Dkt. No. 41.) For the reasons that follow, SBI's motion is granted.

## BACKGROUND

The following allegations are drawn from Plaintiff's amended complaint.

As alleged, Plaintiff was born in India in 1946 but has resided in the United States since 1987 and became a United States citizen in 1991. (Am. Compl. ¶¶ 9–12, Dkt. No. 34.) He currently lives full time in Chicago. (*Id.* ¶ 9.) Shortly after turning 65, Plaintiff placed his retirement pension in a special certificate of deposit account that SBI offered to non-resident

Indian senior citizens ("NRI Account"). (*Id.* ¶¶ 14–17, 20.) Under the terms of Plaintiff's NRI Account, each time he purchased a certificate of deposit from SBI, SBI agreed to pay Plaintiff an additional 1.5% in interest on top of the generally applicable interest rate at the time of purchase. (*Id.* ¶¶ 18–19.) Further, there was no fixed end to SBI's promise to pay that additional interest, so long as Plaintiff remained a non-resident of India. (*Id.* ¶¶ 20, 23–24.) Between 2012 and 2020, Plaintiff purchased several certificates of deposit, each subject to SBI's promise to pay the fixed interest rate in effect at the time of purchase plus the additional 1.5% interest. (*Id.* ¶¶ 16, 21–22.)

In February 2020, SBI informed Plaintiff that the Reserve Bank of India (India's central bank) had changed the rules providing non-resident Indian senior citizens with an additional 1.5% interest. (*Id.* ¶ 25.) Because India's central bank had effected the rule change in 2012, SBI informed Plaintiff that it would be debiting the extra 1.5% interest payments he had received going back to 2012. (*Id.* ¶ 26.) Accordingly, in April 2020, SBI made the debits from Plaintiff's NRI Account over Plaintiff's objection. (*Id.* ¶¶ 27–29.)

During the course of this dispute, Plaintiff further became aware that SBI had taken another action that was contrary to its original agreement with him. (*Id.* ¶ 30.) Despite its promise that each certificate of deposit would earn a fixed rate of interest, Plaintiff noticed that SBI started applying a variable rate of interest on the certificates of deposit beginning in 2017. (*Id.* ¶¶ 31–33.) SBI unilaterally made this change in 2017 without ever informing Plaintiff. (*Id.* ¶ 36.) Upon learning of SBI's action, Plaintiff demanded that it provide him copies of all interest records for his NRI Account going back to 2017. (*Id.* ¶ 37.) However, SBI repeatedly refused Plaintiff's requests. (*Id.*) In addition, when Plaintiff complained about SBI's conduct, SBI retaliated against Plaintiff by freezing his NRI Account and transferring his funds to a locked, non-interest-bearing administrative account, leaving Plaintiff unable to access his funds for nearly a year. (*Id.* ¶ 40.)

Based on SBI's alleged actions in debiting the extra 1.5% interest payments, switching to a variable certificate of deposit rate, and retaliating against Plaintiff for his complaints, Plaintiff has brought the present action asserting a claim for breach of contract, alleging that SBI violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693a *et seq.*, and seeking an accounting of all interest paid and deducted from his NRI Account.

## DISCUSSION

SBI moves to dismiss Plaintiff's complaint under both Rule 12(b)(1) and Rule 12(b)(2), claiming that, as an agency or instrumentality of India, it is a foreign state immune from this Court's jurisdiction under the FSIA. A defendant may raise either a facial or factual challenge to subject-matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A facial challenge requires "only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject[-]matter jurisdiction." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). By contrast, "a factual challenge lies where the complaint is formally sufficient but the contention is that there is *in fact* no subject[-]matter jurisdiction." *Id.* at 444 (internal quotation marks omitted). Where a defendant mounts a factual challenge, "the court may look beyond the pleadings and view any evidence submitted to determine if subject matter[-]jurisdiction exists." *Silha*, 807 F.3d at 173.

Under the FSIA, "'a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States' unless one of several statutorily defined exceptions applies." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610–11 (1992) (quoting 28 U.S.C. § 1604). The FSIA's exceptions "allow the court to obtain subject[-]matter jurisdiction over the case and provide the minimum contacts with the United States required by due process before a court can acquire personal jurisdiction." *Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392,

397 (7th Cir. 2002) (internal quotation marks omitted). Thus, "personal jurisdiction, like subject-matter jurisdiction, exists only when one of the exceptions . . . applies." *Argentine Republic v. Amerada Hess Shipping Co.*, 488 U.S. 428, 435 n.3 (1989); *see also* 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.").

Here, the parties agree that SBI is a foreign state for purposes of the FSIA and thus presumptively immune from jurisdiction. *See Shih v. Taipei Econ. & Cultural Representative Off.*, 693 F. Supp. 2d 805, 809 (N.D. Ill. 2010). The issue, then, is whether one of the FSIA's enumerated exceptions to sovereign immunity applies. *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) ("At the threshold of every action in a district court against a foreign state, the court must satisfy itself that one of the exceptions applies, as subject-matter jurisdiction in any such action depends on that application."). It is the plaintiff's burden to establish that one of the exceptions applies. *See Enahoro v. Abubakar*, 408 F.3d 877, 882 (7th Cir. 2005).

According to Plaintiff, the FSIA's commercial-activity exception applies to SBI's alleged conduct. The commercial-activity exception provides that a foreign state is not immune where:

> the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of a foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). However, the

4

word "commercial" itself is left largely undefined. *Weltover*, 504 U.S. at 612. Nonetheless, the Supreme Court has held that "commercial" should be understood by reference to the "restrictive" theory of sovereign immunity, which the FSIA intended to codify. *Id.* at 612–13. Under the restrictive theory of sovereign immunity, "a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts (*jure imperii*), but not as to those that are private or commercial in character (*jure gestionis*)." *Saudi Arabia v. Nelson*, 507 U.S. 349, 359–60 (1993). The Supreme Court has further explained that "a state engages in commercial activity . . . where it exercises 'only those powers that can also be exercised by private citizens,' as distinct from those 'powers peculiar to sovereigns.'" *Id.* at 360 (quoting *Weltover*, 504 U.S. at 614). "Put differently, a foreign state engages in commercial activity for purposes of the restrictive theory only where it acts 'in the manner of a private player within' the market." *Id.* (quoting *Weltover*, 504 U.S. at 614).

SBI does not dispute that, by issuing certificates of deposit to Plaintiff, making payments on the instruments, and opening and operating his NRI Account, it was engaged in commercial activities for purposes of the FSIA. Plaintiff thus contends that the first prong of the commercial-activity exception applies because SBI engaged in numerous commercial activities within the United States. In particular, Plaintiff notes that SBI has branches located in the United States, including one in Chicago, and it advertised and issued certificates of deposit to American non-resident Indian senior citizens, including Plaintiff. However, the fact that a foreign state engaged in a commercial activity within the United States does not automatically compel the application of the commercial-activity exception. Rather, for the first prong of the FSIA's commercial-activity exception to apply, the action must be "based upon a commercial activity carried on in the United States." 28 U.S.C. § 1605(a)(2). The statute's use of the phrase "based upon" means that the

commercial activity carried on in the United States must constitute "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson*, 507 U.S. at 357.

"[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015). Here, the gravamen of the suit concerns SBI's withdrawal of the additional 1.5% interest payments it claimed were improperly paid to Plaintiff, its unilateral application of a variable rate of interest on his certificates of deposit in contravention of instruments' terms, and its transfer of Plaintiff's funds into a frozen administrative account. SBI has introduced declaration evidence demonstrating that all actions taken with respect to Plaintiff's NRI Account occurred not in the United States but in India. First, SBI is owned and controlled directly by the Indian government and its principal place of business is located in Mumbai, India. (Def.'s Mot. to Dismiss, Ex. 2, Tucker Decl. ¶¶ 3–6, Dkt. No. 41-2.) While SBI has three branches in the United States, SBI "does not open, close, or operate in the United States any non-resident Indian accounts, which instead are offered only by the branches of SBI's parent company in India." (Def.'s Mot. to Dismiss, Ex. 1, Haninger Decl. ¶ 7, Dkt. No. 41-1; Tucker Decl. ¶¶ 7, 11.) Accordingly, NRI Accounts are not covered by the Federal Deposit Insurance Corporation and are not supervised by United States banking regulators. (Haninger Decl. ¶ 7; Tucker Decl. ¶ 11.)

Despite one of SBI's United States branches being located in Plaintiff's hometown of Chicago, Plaintiff has never had an account with SBI's Chicago branch. (Haninger Decl. ¶ 4.) Indeed, Plaintiff's own evidence shows that his funds were held by SBI branches located in India and denominated in Indian rupees. (Pl.'s Opp'n, Ex. 6, Dkt. No. 46-6.) And his amended complaint's allegations further point to India as the location of the conduct underlying his injury:

India's central bank effected the rule change upon which SBI relied as the basis for withdrawing the supposed excess interest payments from Plaintiff's NRI Account. (Am. Compl. ¶ 25.)

Plaintiff's primary response when confronted with SBI's evidence showing that the relevant conduct occurred in India is to disparage its declarations as "self-serving." (Pl.'s Opp'n at 1, 7, 14, Dkt. No. 46.) But the fact that SBI's declarations may be self-serving does not undermine their evidentiary value. *See Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005) ("Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial."); *Clark v. Bumbo Int'l Tr.*, No. 15 C 2725, 2017 WL 3704825, at *4 (N.D. Ill. Aug. 28, 2017) ("[T]he mere self-serving nature of the declaration does not permit the Court to discount it. (citation omitted)). Because SBI has introduced competent evidence calling this Court's jurisdiction into question, Plaintiff must respond with his own proof to avoid dismissal. *Apex Digit.*, 572 F.3d at 444–46.

While Plaintiff submits some evidence concerning SBI's U.S.-based commercial activities, none of those activities relate to the conduct upon which his action is based. Again, it is not enough that SBI has branches in the United States when those branches' activities are entirely disconnected from Plaintiff's NRI Account. Plaintiff does argue that SBI actively advertises NRI Accounts to non-resident Indian senior citizens living in the United States. But he fails to explain how SBI's advertisements are anything but ancillary to his claims. For example, Plaintiff does not contend that the advertisements misrepresented the terms of the certificates of deposit; rather, he claims that SBI breached the financial instruments' terms. Nor does Plaintiff submit any evidence showing that he purchased certificates of deposit as a result of SBI's advertisements targeted to U.S.-based non-resident Indians. In any case, Plaintiff's evidence does not show that SBI's United

States branches took any steps to advertise NRI Accounts. It is true that the websites for SBI's United States branches have a page for non-resident Indian services. (Pl.'s Opp'n, Ex. 5, Dkt. No. 46-5.) Those pages, however, simply inform visitors that SBI's United States branches do not open, close, or operate NRI Accounts, and provide a link to SBI's Indian website for more details regarding such accounts. (*Id.*) Further, the pages contain the following disclaimer: "This link is provided as a service to our parent company or prospective customers for general guidance and is neither a solicitation for business, investment advice nor tax advice." (*Id.*)[1]

Even if his action is found to be based upon SBI's India-based activities such that the first prong of the commercial-activity exception does not apply, Plaintiff argues that those acts caused a "direct effect" in the United States and therefore jurisdiction is available under the commercial-activity exception's third prong. For the direct effect requirement to be met, the effect must "follow[] as an immediate consequence of the defendant's activity." *Weltover*, 504 U.S. at 618. But financial injury to a U.S. citizen alone will not be sufficient "unless the foreign state has performed some legally significant act here." *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 582 (7th Cir. 1989). For example, "[i]n cases involving the default by a foreign state or its instrumentality on its commercial obligations, an act has a direct effect in the United States if the defaulting party is contractually obligated to pay in this country." *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 139 (2d Cir. 2012); *see also Glob. Index, Inc. v. Mkapa*, 290 F. Supp. 2d 108, 113 (D.D.C. 2003) ("[I]n almost every case, in this circuit and others,

---

[1] Plaintiff's other advertising evidence includes a tweet from SBI's official Twitter account. (Pl.'s Opp'n, Ex. 1, Dkt. No. 46-1.) The tweet appears to have come from SBI's primary Twitter account and not an account for one of its United States branches. Further, Twitter has global reach and there is nothing in the tweet itself to suggest that it is specifically targeted at American non-resident Indians as opposed to non-resident Indians generally. In addition, Plaintiff submits a news article providing an overview of NRI Accounts. (Pl.'s Opp'n, Ex. 2, Dkt. No. 46-2.) But there is no indication that the news article was sponsored content or should be viewed as something other than an ordinary news article.

involving the direct effect exception, the existence or absence of an expressly designated place of payment has been decisive. When a contract or note designates the United States for payment, courts have found a direct effect . . . .").

Here, Plaintiff fails to demonstrate or introduce evidence showing that SBI's conduct had any direct effect in the United States beyond causing financial loss to Plaintiff. Moreover, SBI points out that Plaintiff's own evidence shows that SBI's payments on the certificates of deposit were deposited into Plaintiff's India-based accounts and denominated in Indian rupees. (Pl.'s Opp'n, Ex. 6.) That the funds in Plaintiff's NRI Account were transferred there from a United States bank account has no bearing on the direct-effect analysis. *See Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 80 (2d Cir. 2010) ("[T]he transfer of funds ***out of*** a New York bank account ***is not*** itself sufficient to place the effect of a defendant's conduct in the United States . . . ." (internal quotation marks omitted)); *Goel v. Am. Digit. Univ., Inc.*, Nos. 14-cv-2053 (KBF), 14-cv-1895 (KBF), 2017 WL 1082458, at *16 (S.D.N.Y. Mar. 21, 2017) (same). Thus, Plaintiff cannot show that the commercial-activity exception's third prong applies. And because Plaintiff does not claim that any of the FSIA's other exceptions apply, and the Court can identify no other exception that might apply to Plaintiff's allegations, SBI has shown that it is immune from Plaintiff's lawsuit under the FSIA.

Anticipating that the Court might find that he failed to demonstrate the applicability of the commercial-activity exception, Plaintiff asks that the Court nonetheless allow him to conduct jurisdictional discovery instead of dismissing the amended complaint. Plaintiff asserts that courts often allow jurisdictional discovery before dismissing on sovereign immunity grounds. However, when jurisdictional discovery is permitted in the FSIA context, it is because the plaintiff has demonstrated a reasonable possibility that discovery would produce facts supporting jurisdiction.

*See, e.g.*, *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 694–65 (7th Cir. 2012) ("The Szarvas Declaration is enough to raise a question as to what, if any, commercial activity the national railway conducts in the United States, and that jurisdictional question cannot be resolved on the pleadings."); *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 513 (S.D.N.Y. 2017) ("[J]urisdictional discovery is only permitted in the FSIA context to verify allegations of specific facts crucial to an immunity determination, not to uncover those facts in the first instance." (internal quotation marks omitted)); *see also Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994) ("[W]e do not see what facts additional discovery could produce that would affect our jurisdictional analysis above and therefore conclude the district court did not abuse its discretion in dismissing the action when it did."). That is because "the principles of comity underlying the FSIA require the district court . . . to balance the need for discovery to substantiate exceptions to statutory foreign sovereign immunity against the need to protect a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009) (internal quotation marks omitted).

  Plaintiff, however, has given the Court no reason to believe that he will be able to establish subject-matter jurisdiction if he is permitted to take discovery. Indeed, based on Plaintiff's allegations, the Court would expect that any information relevant to the applicability of the commercial-activity exception should already be within Plaintiff's personal knowledge or within his possession or control. For example, to show that the action was based upon SBI's commercial activities in the United States, Plaintiff could have submitted a declaration that described the nature of his interactions with SBI in the United States. Similarly, if the SBI's India-based commercial activities had a direct effect in the United States, Plaintiff would presumably be aware of those direct effects and be able to present evidence on the issue. That Plaintiff did not

respond to SBI's jurisdictional challenge with any evidence supporting the applicability of one of the FSIA's exceptions suggests to the Court that jurisdictional discovery would be nothing more than a fishing expedition. Consequently, the Court denies Plaintiff's request for leave to conduct jurisdictional discovery and dismisses his amended complaint without prejudice for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, SBI's motion to dismiss for lack of jurisdiction (Dkt. No. 41) is granted. The amended complaint is dismissed without prejudice.

ENTERED:

Dated: September 27, 2022

_____
Andrea R. Wood
United States District Judge